# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAWRENCE WASHINGTON, | * | Civil Action No. |
| Plaintiff, | * | |
| v. | * | |
| CITY OF NEW LONDON AND THE NEW LONDON BOARD OF EDUCATION, | * | JULY 9, 2020 |
| Defendants. | * | |

## COMPLAINT

1. The Plaintiff, Lawrence Washington, resides at 206 Gallup Hill Road, Ledyard, Connecticut and his race is African-American.

2. At all times material to this Complaint, the Defendant, the New London Board of Education ("BOE"), is a governmental body subject to the laws of the State of Connecticut.

3. At all times material to this Complaint, the Defendant, City of New London, ("City"), was a municipal entity organized and existing under the laws of the State of Connecticut.

4. At all times material to this Complaint, the Defendant, BOE was acting on behalf of and in concert with the Defendant, City in carrying out its duties to educate, administer, supervise and provide a safe environment for public school students and staff.

5. At all times material to this Complaint, the Defendant, BOE was responsible for the administration and management of all city schools, and the selection and retention of all school employees.

6. The Defendants are charged with the responsibility of education and graduating students in the City of New London Public Schools ("NLPS").

## JURISDICTION AND VENUE

7. This is an action that arises under Title VII if of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, et seq., the Federal Civil Rights Act of 1871, 42 U.S.C. § 1983, to redress the deprivation, under color of state law, of rights, privileges and immunities secured to the plaintiff by the United States Constitution, particularly the First and Fourteenth Amendments, as well as state Constitutional, statutory and common law claims. Jurisdiction of this Court is based upon 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

8. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391(b) in that plaintiff, Lawrence Washington, resides in Connecticut, his claims arose in this district, and substantial actions occurred in this district.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. The plaintiff filed a timely claim with the Connecticut Commission of Human Rights and Opportunities ("CHRO") and the Equal Employment Opportunity Commission ("EEOC").

10. The Plaintiff's complaint with the CHRO was assigned CHRO No. 2040375 and his EEOC claim was assigned Case No. 16A-2020-01109.

11. The CHRO issued a Release of Jurisdiction to Washington on April 13, 2021. (Ex. A.)

12. The EEOC issued a Right to Sue letter on April 21, 2021. (Ex. B.)

13. The plaintiff has commenced this lawsuit within ninety (90) days of the plaintiff's receipt of the Release of Jurisdiction issued to him by the CHRO and the Right

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C. THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320 TEL (800) 442-4416 JURIS NO 62114

to Sue letter from the EEOC and, as a result, the plaintiff has fully complied with the administrative pre-requisites of Title VII, CFEPA and all other applicable statutes.

14. All conditions precedent to this lawsuit have been fulfilled.

## BACKGROUND

15. Mr. Washington was employed by the Defendant as the NLPS Director of Health, Physical Education and Athletics until his wrongful termination effective December 27, 2019.

16. The Employee Status Form reflecting Mr. Washington's termination states he was terminated "due to failure to complete required college coursework necessary to obtain renewal of 092 administrative certificate."

17. That reason was inaccurate and was a pretext for retaliating against Mr. Washington.

18. Mr. Washington obtained his Provisional Certification in 2011.

19. The Provisional Certification was set to expire on November 30, 2019.

20. Mr. Washington was required to obtain 18 credits of accredited college coursework in order to qualify for the Provisional Certification.

21. The Professional Certification requires an additional 12 credits, for a total of 30 credits.

22. Mr. Washington was aware that he needed to complete his coursework prior to November 30, 2019, and did so.

23. On November 15, 2019, Mr. Washington advised the Bureau Chief of the Connecticut State Department of Education Certification Office ("Bureau Chief") that his

3

coursework would be completed in time to upgrade to his Professional Certification, but that the transcript may not be available to meet the November 30th deadline.

24. Also on November 15, 2019, Mr. Washington brought all of his documentation to Beth McCaffery, the NLPS Data Analysis & Management Coordinator, to show her that all of his coursework had been completed.

25. Despite providing that information, Mr. Washington was later informed that he may need to meet with Kate McCoy, the NLPS Executive Director of Strategic Planning, Government and Media Relations, and that he may be subject to discipline if the coursework was not completed and documented.

26. On November 22, 2019, Mr. Washington completed the additional 12 credits of coursework, which should have satisfied the requirements for the Professional Certification.

27. On November 26, 2019, the Bureau Chief informed Mr. Washington by email that a transcript related to the completed coursework was not necessary.

28. He stated "[i]f you can get a letter from the university stating that all coursework was completed on a particular date, the Bureau would use the letter to set the completion date in our CECS system vs. using the official transcript date."

29. Also on November 26, 2019, Mr. Washington spoke to Beth McCaffery and informed her that he had the transcript evidencing completion of the coursework.

30. Ms. McCaffrey informed Mr. Washington that she was informed by CSDE that he was still 3 credits short of his requirement.

31. On or about December 2, 2019, Mr. Washington and Beth McCaffery had a conversation with a representative at CSDE wherein they learned that CSDE made an

4

administrative error in issuing the 092 to Mr. Washington for his Provisional Certification in 2011.

32. While Mr. Washington was required to have 18 credits at that time, he only had 15 credits. From 2011 to this phone conversation, the CSDE never informed Mr. Washington of this administrative error.

33. As such, Mr. Washington needed 15 additional credits, not the 12 that he had completed.

34. The CSDE representative advised Mr. Washington to immediately enroll in a course to obtain the additional 3 credits; he did so.

35. During the next couple of weeks, Mr. Washington had several conversations with the Bureau Chief wherein the Bureau Chief expressed to him that the CSDE would do what they could to correct this problem and make sure he received his certification without any lapse.

36. On December 20, 2019, the Bureau Chief emailed Ms. McCaffery and Mr. Washington stating that one avenue of correcting the situation that would allow an extension of the Provisional Certification was for New London Public Schools to verify that "any of Mr. Washington's 8 years of service under the provisional #092 were 10-month positions."

37. The Bureau Chief further reiterated that position stating, "if New London is able to verify that any years of service in the past 8 years Mr. Washington served in a 10-month position vs. a 12-month position, we can add additional months to Mr. Washington's provisional #092."

5

38. Adding those additional months would have allowed for the completion of the required coursework.

39. The Bureau Chief concluded that he "hope[d] this provides potential pathways forward for New London Public Schools and Mr. Washington."

40. Mr. Washington had served in a 10-month position as a Dean during his first year of employment with the NLPS.

41. On December 23, 2019, Mr. Washington spoke to Ms. McCaffery and Kate McCoy who informed him that he could no longer serve in his current role.

42. Mr. Washington stated that was inconsistent with what the CSDE had told him.

43. Ms. McCaffrey indicated that Mr. Washington must have misunderstood what he was told, despite the fact that she received the same emails stating that the 10-month position he held as dean could have been used to extend his Provisional Certification for a sufficient period of time to complete the coursework.

44. In the same conversation with Ms. McCaffery, Mr. Washington was informed that he could not be "bumped to a certified position" however, he could be moved to a Grant Writer position.

45. Mr. Washington asked that the conversation be documented in writing and both agreed to do so.

46. On December 27, 2019, instead of receiving documentation confirming the December 23, 2019 conversation as expected and agreed to, Mr. Washington received an email from Superintendent Cynthia Ritchie indicating that he was being terminated effective December 27, 2019.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C. THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL (800) 442-4416    JURIS NO 62114

47. Mr. Washington emailed the Superintendent requesting a meeting; she never responded.

48. An Employee Status Form referencing Mr. Washington's termination was issued stating the reason for termination being "due to failure to complete required college coursework necessary to obtain renewal of 092 administrative certificate."

49. On December 30, 2019, the Superintendent told Mr. Washington's union representatives that the District "had tried to work with the state already and there were no other options."

50. That statement was patently false, as the CSDE had expressly stated that the District need only submit an ED126 Form including reference to the 10-month position Mr. Washington originally held as Dean of Students and he would receive an extension.

51. Also on December 30, 2019, the Bureau Chief reiterated to Mr. Washington in an email that he should "work with New London Public Schools to complete the ED126 form indicating either service in a 10-month capacity or leave at which point we can add time to your provisional certificate."

52. Mr. Washington was placed on administrative leave on two separate occasions in 2019 for a total of approximately 3 ½ months.

53. As such, the District could have easily supported an extension for Mr. Washington by simply submitting an ED126 referencing both the leave time and the 10-month position period.

54. The Bureau Chief concluded that if "New London does not submit an ED126, the lapse in your certificate will remain until you demonstrate successful completion of your coursework to complete your MA +30 and your application clears."

7

55. On January 1, 2020, Mr. Washington formally applied for the Grant Writer position that Ms. McCaffery said he could transition into. He has received no response to that application.

56. On January 2, 2020, Bureau Chief reiterated to Mr. Washington that his certification expiration and extension were entirely in the hands of the New London Public Schools because all the District had to do was submit the ED126 documentation that Mr. Washington had been on leave for a period of time.

57. He also stated that the District could always call CSDE and speak to Ms. Frost if they had any questions about the ED126.

58. Also on January 2, 2020, Mr. Washington requested a copy of the ED126 that was submitted.

59. That request followed prior requests for the form.

60. The request was reiterated on January 7, 2020, by Mr. Washington's union.

61. Ms. McCaffery finally responded on January 7, 2019, indicating that the request must be made through union counsel to the District's counsel, an absurd response to a reasonable demand from an employee.

62. On January 7, 2020, the union and Ms. McCaffery met to discuss the ED126, which had still not been submitted by the District.

63. Ms. McCaffrey continued to contend that the 10-month position held by Mr. Washington was not relevant.

64. The union pointed to a CSDE 2017 Certification Alert, which made it absolutely clear that position was entirely incorrect.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C. THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320 TEL (800) 442-4416 JURIS NO 62114

65. On January 9, 2020, Mr. Washington completed the coursework for the additional credits.

66. On January 11, 2020, the grade for the additional 3 credits was entered by the University and the University declared that the course was completed by Mr. Washington.

67. On January 22, 2020, CSDE issued Mr. Washington his Professional Certificate with an effective date of January 17, 2020.

68. As such, with even a short extension that would have been granted by the CSDE if the District submitted an accurate and appropriate ED126, Mr. Washington's certification would never has lapsed.

69. It is apparent that the New London Public Schools took steps in contravention of the duty of good faith it owed to Mr. Washington.

70. Mr. Washington's certification issue could have been resolved by the simple act by the District of submitting that ED126 referencing the 10-month position and/or the periods of leave.

71. Instead, the District refused to take that step and, instead, terminated Mr. Washington as soon as it could.

72. Bureau Chief told Mr. Washington that the CSDE role is to assist educators, teachers and administrators to make sure they obtain and retain their certifications without any lapses.

73. The CSDE will take what action it can within the law to assist individuals in that regard. More often than not, school districts contact the CSDE asking for assistance to make sure that their employees maintain or obtain their certifications.

9

74. With respect to whether it mattered if the leave Mr. Washington had was paid or unpaid, a position taken by the NLPS, Bureau Chief indicated that it did not matter as long as the employee was not working during that period.

75. Mr. Washington's leave period clearly would have satisfied the CSDE that Mr. Washington was entitled to an extension.

76. In this case, the New London Public Schools did not try to assist it's employee through this process.

77. In fact, the school refused to take the simple step of submitting the ED126.

78. As such, the New London Public Schools failed its employee causing him to lose his position.

79. The District's actions have severely damaged Mr. Washington's professional reputation as well.

80. In a January 3, 2019, article in The Day, the Superintendent is quoted stating that "in his eight years in the district he had failed to complete the required college coursework necessary to obtain a renewal."

81. That was a false or, at best, misleading statement.

82. Mr. Washington did complete the classwork that he understood based on his Provisional Certification was necessary.

83. It was not until the District and Mr. Washington were informed of the CSDE administrative error related to his prior credits that Mr. Washington learned he needed to obtain an additional 3 credits.

84. Mr. Washington has proved to be by no fault of his own a lightning rod for the administration.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL (800) 442-4416   JURIS NO 62114

85. Mr. Washington was unfairly connected to a student abuse situation involving Corriche Gaskin, an NLPS employee, and was placed on administrative leave for two months starting on May 10, 2019, pending an investigation.

86. That investigation revealed no wrongdoing by Mr. Washington.

87. Mr. Washington was again placed on administrative leave on August 29, 2019, for a period of approximately 6 weeks.

88. That investigation involved allegations of purported wrongdoing from a period approximately 8 years ago.

89. Again, Mr. Washington was cleared of any wrongdoing.

90. However, because of the District's wrongful termination, the press jumped on those two leaves of absence to raise questions about Mr. Washington's past behavior.

91. That record has not been clarified by the District and, more importantly, would not have needed to be clarified but for the District's refusal to simply provide the CSDE with an accurate ED 126.

92. The District could have allowed Mr. Washington to remain employed while his certification was resolved.

93. The District could also simply have administratively suspended Mr. Washington until the resolution of his certification.

94. The CSDE approved the Professional Certification effective January 17, 2020.

95. Students returned to school for the Spring semester on or about January 7, 2020.

Suisman, Shapiro, Wool, Brennan, Gray & Greenberg, P.C.   the courtney building, suite 200, 2 union plaza, post office box 1591
new london, connecticut 06320   tel (800) 442-4416     juris no 62114

96. As such, Mr. Washington's Professional Certification was approved only 9 school days into the spring semester.

97. Numerous administrative employees and teachers employed by the District whose administrative and/or teacher certifications lapsed continued working for the District during those lapses.

98. None of those employees who were allowed to continue working with lapsed certifications were African-American males.

99. In fact, the woman who temporarily replaced Mr. Washington as the director of athletics after his termination was an uncertified employee.

100. That employee is a Caucasian female.

**FIRST COUNT**
VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, C.G.S. § 46a-60(b)(1) (Race Discrimination)

1-100. Paragraphs 1-100 of the Complaint are re-alleged and incorporated herein as if fully set forth.

101. By the above acts and practices, The City of New London has discriminated against Mr. Washington on the basis of his race in violation of the Connecticut Fair Employment Practices Act when it terminated his employment and treated him in a disparate manner as compared to Caucasian colleagues.

102. Mr. Washington has suffered and will continue to suffer damages, including but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity, and loss of the ability to enjoy life's pleasures and activities.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.  THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL (800) 442-4416    JURIS NO 62114

103. The City of New London has engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under Connecticut law.

104. Mr. Washington has incurred attorney's fees in pursuit of these claims.

## SECOND COUNT
VIOLATION OF THE CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, C.G.S. § 46a-60(b)(4) (CFEPA Retaliation)

1-100. Paragraphs 1-100 of the Complaint are re-alleged and incorporated herein as if fully set forth.

105. By the above acts and practices, the City of New London retaliated against Mr. Washington in violation of CFEPA.

106. Mr. Washington has suffered and will continue to suffer damages, including but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity, and loss of ability to enjoy life's pleasures and activities.

107. The City of New London has engaged in these discriminatory practices with malice and reckless indifference to the plaintiff's rights protected under Connecticut law.

108. Mr. Washington has incurred attorney's fees in pursuit of these claims.

## THIRD COUNT
VIOLATION OF 42 U.S.C. § 2000E, et seq. (Title VII - Race Discrimination)

1-100. Paragraphs 1-100 of the Complaint are re-alleged and incorporated herein as if fully set forth.

109. By the above acts and practices, The City of New London has discriminated against Mr. Washington on the basis of his race in violation of the 42 U.S.C. § 2000e, et

13

seq., when it terminated his employment and treated him in a disparate manner as compared to Caucasian colleagues.

110. Mr. Washington has suffered and will continue to suffer damages, including but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity, and loss of the ability to enjoy life's pleasures and activities.

111. The City of New London has engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under Connecticut law.

112. Mr. Washington has incurred attorney's fees in pursuit of these claims.

## FOURTH COUNT
VIOLATION OF 42 U.S.C. § 2000e, et seq. (Title VII - Retaliation)

1-100. Paragraphs 1-100 of the Complaint are re-alleged and incorporated herein as if fully set forth.

113. By the above acts and practices, the City of New London retaliated against Mr. Washington in violation of 42 U.S.C. § 2000e, et seq.

114. Mr. Washington has suffered and will continue to suffer damages, including but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity, and loss of ability to enjoy life's pleasures and activities.

115. The City of New London has engaged in these discriminatory practices with malice and reckless indifference to the plaintiff's rights protected under Connecticut law.

116. Mr. Washington has incurred attorney's fees in pursuit of these claims.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL (800) 442-4416    JURIS NO 62114

## FIFTH COUNT
VIOLATION OF CONNECTICUT FAIR EMPLOYMENT PRACTICES ACT, C.G.S. § 46a-58(a) (Deprivation of Rights)

1-100. Paragraphs 1-100 of the Complaint are re-alleged and incorporated herein as if fully set forth.

117. By the above acts and practices, the City of New London has deprived Mr. Washington of rights, privileges, or immunities, secured or protected by the Constitution or laws of this state or the United States, on account of his race.

118. Mr. Washington has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

119. The City of New London engaged in these discriminatory practices with malice and with reckless indifference to the plaintiff's rights protected under Connecticut law.

120. Mr. Washington has incurred attorney's fees in pursuit of these claims.

## COUNT SIX
42 U.S.C. § 1983 and First and Fourteenth Amendments Suppression of Freedom of Association

1-100. Paragraphs 1-100 of the Complaint are re-alleged and incorporated herein as if fully set forth.

121. The Plaintiff engaged in constitutionally protected activity when he associated out of work with Gaskin.

122. The Plaintiff's association with Gaskin did not impede in any way with the plaintiff's job performance or duties.

15

123. After engaging in constitutionally protected association with Gaskin, the defendants retaliated against the plaintiff and disciplined him as a direct result of his protected activity.

124. The defendants' wrongful acts against the plaintiff were in violation of both the United States and Connecticut Constitutions and, more specifically, in violation of the plaintiff's First Amendment rights to free speech and association, as secured against state infringement by the Fourteenth Amendment to the United States Constitution and 42 U.S.C. § 1983.

125. The plaintiff has been caused to suffer damages due to the defendants' wrongful acts, and is entitled to compensatory and punitive damages, emotional distress damages, and attorneys' fees.

## SEVENTH COUNT
BREACH OF IMPLIED COVENANT OF GOOD FAITH AND FAIR DEALING

1-100. Paragraphs 1-100 of the Complaint are re-alleged and incorporated herein as if fully set forth.

126. The relationship between the defendants and the plaintiff was contractual in nature.

127. An implied covenant of good faith and fair dealing is inherent in all contracts, including the employment relationship between the defendants and plaintiff.

128. The defendant's termination violated the covenant of good of good faith and fair dealing as it was undertaken in contravention of important public policies recognized by the State of Connecticut.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL (800) 442-4416   JURIS NO 62114

129. The State of Connecticut recognizes the important public policy of protecting the plaintiff's vested property interest in his continued employment as a public employee.

130. More specifically, the Connecticut Teacher Tenure Act, General Statutes § 10-151, requires that the defendants have just cause to terminate Mr. Washington.

131. In this case, no just cause existed.

132. Mr. Washington did not cause the problem with credits that held up his certification; that was caused by a clerical error by the CSDE.

133. Instead of assisting Mr. Washington is correcting the problem and continuing his employment, the defendants intentionally impeded Mr. Washington's continued employment by refusing to provide accurate information to the State of Connecticut regarding his past positions held and his prior periods in a suspended status.

134. The defendants also had the opportunity to handle the matter without resorting to termination.

135. The defendants could have placed the plaintiff on a short period of administrative leave pending completion of his credits or placed him in a temporary position pending resolution of the credit issue.

136. Mr. Washington has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

Suisman, Shapiro, Wool, Brennan, Gray & Greenberg, P.C.   the courtney building, suite 200, 2 union plaza, post office box 1591
new london, connecticut 06320   tel (800) 442-4416     juris no 62114

# EIGHTH COUNT
## COMMON LAW WRONGFUL TERMINATION

1-100. Paragraphs 1-100 of the Complaint are re-alleged and incorporated herein as if fully set forth.

137. Mr. Washington's termination was undertaken in contravention of the State of Connecticut's recognized public policies.

138. The State of Connecticut recognizes the important public policy of protecting the plaintiff's vested property interest in his continued employment as a public employee.

139. More specifically, the Connecticut Teacher Tenure Act, General Statute § 10-151, requires that the defendants have just cause to terminate Mr. Washington.

140. In this case, no just cause existed.

141. Mr. Washington did not cause the problem with credits that held up his certification; that was caused by a clerical error by the CSDE.

142. Instead of assisting Mr. Washington is correcting the problem and continuing his employment, the defendants intentionally impeded Mr. Washington's continued employment by refusing to provide accurate information to the State of Connecticut regarding his past positions held and his prior periods in a suspended status.

143. The defendants also had the opportunity to handle the matter without resorting to termination.

144. The defendants could have placed the plaintiff on a short period of administrative leave pending completion of his credits or placed him in a temporary position pending resolution of the credit issue.

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C.   THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320   TEL (800) 442-4416   JURIS NO 62114

145. Mr. Washington has suffered and will continue to suffer damages, including, but not limited to, past and future lost wages and fringe benefits, interest, emotional and psychological distress, loss of reputation, loss of earning capacity and loss of the ability to enjoy life's pleasures and activities.

WHEREFORE, the plaintiff respectfully requests that this Court take jurisdiction over his case and grant judgment against the defendants. The plaintiff prays the following relief be granted:

1. economic damages, including back and front wages;

2. non-economic damages, including loss of reputation and emotional distress;

3. reasonable attorney's fees and costs;

4. pre-judgment and post-judgment interest on his economic losses; and

5. any other damages the Court deems appropriate.

THE PLAINTIFF,
LAWRENCE WASHINGTON

BY: /s/ Theodore W. Heiser
*Theodore W. Heiser, ct23807*
*Suisman, Shapiro, Wool, Brennan,*
*Gray & Greenberg, P.C.*
*2 Union Plaza, Suite 200*
*P.O. Box 1591*
*New London, CT 06320*
*Tele. No.: (860)442-4416*
*Fax No.: (860) 442-0495*
*Email: theiser@sswbgg.com*
*His Attorney*

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C. THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320 TEL (800) 442-4416 JURIS NO 62114

# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| LAWRENCE WASHINGTON, | * | Civil Action No. |
| Plaintiff, | * | |
| v. | * | |
| CITY OF NEW LONDON AND THE NEW LONDON BOARD OF EDUCATION, | * | JULY 9, 2020 |
| Defendants. | * | |

## JURY TRIAL CLAIM

The plaintiff, Lawrence Washington, claims a trial by jury on all claims triable by jury.

        THE PLAINTIFF,
        LAWRENCE WASHINGTON

        BY: /s/ Theodore W. Heiser
        *Theodore W. Heiser, ct23807*
        *Suisman, Shapiro, Wool, Brennan,*
        *Gray & Greenberg, P.C.*
        *2 Union Plaza, Suite 200*
        *P.O. Box 1591*
        *New London, CT 06320*
        *Tele. No.: (860)442-4416*
        *Fax No.: (860) 442-0495*
        *Email: theiser@sswbgg.com*
        *His Attorney*

SUISMAN, SHAPIRO, WOOL, BRENNAN, GRAY & GREENBERG, P.C. THE COURTNEY BUILDING, SUITE 200, 2 UNION PLAZA, POST OFFICE BOX 1591
NEW LONDON, CONNECTICUT 06320 TEL (800) 442-4416 JURIS NO 62114